Filed 5/1/25  P. v. Valencia CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B336931 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA099328) |
| v. | |
| JOSUE VALENCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lloyd M. Nash, Judge. (Retired Judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Josue Valencia appeals from a final judgment following the denial of his motion for mental health diversion and a no contest plea. Defendant contends the trial court erred in denying his request for mental health diversion under Penal Code section 1001.36[1] on the ground of unreasonable risk to public safety. Finding no abuse of discretion, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 5, 2022, M.O.[2] drove into an alley to avoid construction on the main road. A vehicle parked in the middle of the alley blocked his path. Defendant was in the passenger seat of the obstructing vehicle and Defendant's son was driving. As M.O. was trying to get through to continue driving, Defendant exited the vehicle and came over to him. As M.O. put it, "I don't know what was the matter with him, but he was very aggressive." Defendant picked up a rock from the street and hit M.O. on the head with the rock three times through M.O.'s open car window. The impact caused a lot of bleeding and M.O. lost consciousness for a few seconds. M.O. exited the car to try to stop Defendant's assault. Even after M.O. got out of the car, Defendant continued to fight with him in the street, hitting him with his closed fist on the sides and in the face as M.O. was trying to defend himself. M.O. estimated the incident lasted

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     The facts are summarized from the preliminary hearing. To protect his privacy, we refer to the victim, variations of whose name appear in the record, by the initials M.O. (Cal. Rules of Court, rule 8.90(b)(4).)

about 10 minutes. Defendant also threatened M.O. that "if he had a gun, he would have killed [him]." Paramedics arrived and treated M.O. at the scene. M.O. went to the hospital that same day and received seven or eight stitches on his head. M.O., who was 65 years old at the time of the incident, lost three weeks of work as a driver and ultimately lost his job because of the injury.

A felony complaint charged Defendant with elder abuse in violation of section 368, subdivision (b)(1). The complaint alleged M.O. suffered great bodily injury within the meaning of section 368, subdivision (b)(2).

Defendant filed a motion for mental health diversion under sections 1001.35 and 1001.36 in March 2023. He argued diversion was appropriate because he suffered from posttraumatic stress disorder and alcohol and cannabis use disorders. He further argued his mental disorders played a significant role in the commission of the offense, his symptoms would respond to mental health treatment, he was agreeable to diversion and would comply with treatment, he did not pose an unreasonable risk of danger to public safety, and his treatment would meet his mental health needs. The motion was supported by a written evaluation from Dr. Jenna Tomei Walker and probation and police reports.

The trial court denied the motion in April 2023, stating: "As much as I would like to grant mental health diversion in this matter, I can't see my way to do that."

Following a preliminary hearing, an information filed in June 2023 further alleged Defendant personally inflicted great bodily injury under section 12022.7, subdivision (a) and three circumstances in aggravation under California Rules of Court, rule 4.421. Specifically, the circumstances in aggravation were: (1) the offense involved great violence, great bodily harm,

threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness; (2) Defendant was armed with and used a weapon at the time of the offense; and (3) Defendant engaged in violent conduct that indicated a serious danger to society.

In October 2023, Defendant filed a motion for reconsideration of the trial court's denial of his March 2023 motion for mental health diversion. The motion for reconsideration noted the law on determining suitability and eligibility for mental health diversion had changed effective January 1, 2023, and while the March 2023 motion had been filed after that date, it had used the old, pre-2023 standards. The motion for reconsideration also discussed a 2022 case, *People v. Whitmill* (2022) 86 Cal.App.5th 1138 (*Whitmill*), which had not been addressed in the March 2023 motion. Finally, the motion for reconsideration argued Defendant had been following a treatment plan since approximately August 11, 2023. The court denied the motion in December 2023, finding Defendant was not suitable for diversion on public safety grounds.

The parties thereafter agreed to amend the information to add a second count of assault with a deadly weapon—a rock (§ 245, subd. (a)(1))—which also included a special allegation that Defendant inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). On April 8, 2024, before a different judge, Defendant pleaded no contest to this new count 2 and admitted the special allegation. In exchange, the trial court suspended the sentence and placed Defendant on formal felony probation for two years. The court also ordered him to make full restitution and complete 600 hours of community service.

4

Defendant timely appealed the denial of his motion for mental health diversion. (§ 1237, subd. (b); Cal. Rules of Court, rule 8.308(a).)

## DISCUSSION

## I.  The Trial Court Did Not Abuse Its Discretion in Denying Mental Health Diversion

### A.  Standard of Review

We review a trial court's ruling on a motion for mental health diversion for an abuse of discretion, and factual findings are reviewed for substantial evidence. (*Whitmill, supra,* 86 Cal.App.5th at p. 1147.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.)

We review the trial court's factual findings as to the enumerated statutory criteria for substantial evidence. (*People v. Brown* (2024) 101 Cal.App.5th 113, 121 (*Brown*).) Under this deferential standard of review, " 'we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079.)

An appellate court implies " 'all findings necessary to support the judgment, and [its] review is limited to whether there is substantial evidence in the record to support these implied findings.' " (*People v. Francis* (2002) 98 Cal.App.4th 873, 878.) "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to

support the judgment." (*People v. Arter* (2017) 19 Cal.App.5th Supp. 1, 6.)

## B. Procedure to Assess Eligibility and Suitability for Mental Health Diversion

Pretrial diversion means the "postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment," subject to certain conditions. (§ 1001.36, subd. (f).) Section 1001.36 sets out the procedure by which a court may determine both that a defendant satisfies the eligibility requirements, and that a defendant is suitable for mental health diversion.

To be eligible, a defendant must show both that (i) the defendant has been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders; and (ii) the defendant's mental disorder was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b)(1) & (2).)

After finding a defendant eligible, the court must then turn to the suitability factors. "A defendant is suitable for pretrial diversion if all of the following criteria are met: [¶] (1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing . . . the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district

6

attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c).) The statute then provides a list of offenses which preclude a defendant from being placed into diversion if they constitute the current charged offense, none of which is at issue here. (§ 1001.36, subd. (d).)

Both parties agree the trial court's basis for denying diversion in this case was that Defendant would pose an unreasonable risk to public safety. We thus turn to the interpretation of this suitability requirement.

Both before and after 2023, section 1001.36 has incorporated by reference the definition of "unreasonable risk of danger to public safety" contained in section 1170.18: "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of" section 667, subdivision (e)(2)(C)(iv). (§§ 1001.36, subd. (c)(4), 1170.18, subd. (c).)

Section 667, in turn, lists eight categories of offenses, including sexually violent offenses, oral copulation with a child under 14, homicide or attempted homicide, solicitation to commit murder, assault with a machine gun on a peace officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by life imprisonment—offenses colloquially referred to as "super strikes." (*Id.,* subd. (e)(2)(C)(iv)(I)-(VIII); *Whitmill, supra,* 86 Cal.App.5th at p. 1149.)

If the defendant makes a prima facie showing he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial

court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (*People v. Frahs* (2020) 9 Cal.5th 618, 627.)

### C. The Trial Court's Decision to Deny Pretrial Diversion Was Within Its Discretion

Defendant argues the trial court abused its discretion by failing to order mental health diversion because there was no evidence Defendant was at risk of committing a super strike. Defendant points to his lack of prior violent behavior and, specifically, that he had never before committed a super strike.

There is no requirement that, in order to find a defendant poses an unreasonable risk of committing a super strike, he or she must have already committed one. None of the cases Defendant cites reaches that holding. In *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 897, the Court of Appeal reversed a trial court's order denying diversion, holding: "here, there is no substantial evidence to support a conclusion that Sarmiento was likely to commit a super strike offense. Indeed, the charged offense in this case involved no evidence of a weapon or threat of violence. Nor could the court invoke its 'residual' discretion to create a definition of 'risk to public safety' inconsistent with the statutory definition."

Similarly, in *Whitmill*, the trial court reversed the denial of diversion where not only was there no prior violent history, but the charged offense involved no violence but rather a shot fired into the air, followed by immediate compliance when police took the defendant into custody. (*Whitmill, supra*, 86 Cal.App.5th at pp. 1142-1143, 1151.)

By contrast, in this case, there was evidence the Defendant used a weapon (a rock), committed significant and sustained violence on an elderly stranger, and said that if he had had a gun, he would have killed the victim. "[T]here is nothing in section 1001.36, with respect to either eligibility or suitability, that precludes a trial court from relying primarily, or even entirely, on the circumstances of the charged offense or offenses in denying a motion for diversion." (*People v. Bunas* (2022) 79 Cal.App.5th 840, 862.)

We find this case fits more closely with the facts in *Brown*. There, a defendant was convicted of mayhem and assault with a deadly weapon for assaulting a neighbor with a metal cane after the neighbor knocked on the defendant's door and accused him of stealing a doorstop. (*Brown, supra,* 101 Cal.App.5th at pp. 117, 124.) The jury also found true the allegation that the victim was vulnerable and the offense involved great violence and a high degree of cruelty, viciousness or callousness. "From this, the trial court could reasonably infer that there was a significant risk that [defendant] could commit an even more serious, violent felony in the future, and therefore posed an unreasonable risk under section 1001.36, subdivision (c)(4)." (*Id.* at p. 124.)

Defendant urges he was suitable for diversion because this was his first violent offense, he had been treatment compliant for some time, and he had been on unsupervised release for one year following his arrest. However, "the existence of some evidence in support of either conclusion is not a sufficient basis for this court to supplant the findings of the trial court." (*Brown, supra,* 101 Cal.App.5th at p. 124.)

Nor do we find persuasive that, after pretrial mental health diversion was denied, a different judge agreed to order probation

after a plea deal was reached. An appellate court evaluates a claim that the trial court abused its discretion "in light of the showings made and the facts known by the trial court at the time of the court's ruling." (*People v. Merriman* (2014) 60 Cal.4th 1, 37.)[3]

We acknowledge a trial judge, presented with these facts, could have reached the opposite conclusion and granted pretrial diversion. But "a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

## DISPOSITION

The judgment is affirmed.


RICHARDSON, J.

WE CONCUR:

LUI, P. J.          ASHMANN-GERST, J.

---

[3] There is a passing reference in the Appellant's Opening Brief to Defendant being on pretrial release as well, but there is no detail as to when or why that decision was reached, and no cite to the record. A "reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.)